IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN R. MCCLELLAND AND AMY MCCLELLAND,<br><br>          Plaintiffs,<br><br>vs.<br><br>MERCK & CO.; JASON M. TONGSON; KAREN S. OCHIAI; LISA ARMENIO; EGAN INOUE; JOHN DOES 1-10; DOE PARTNERSHIPS 1-10; DOE "NON-PROFIT" CORPORATIONS 1-10; AND DOE GOVERNMENTAL ENTITIES 1-10<br><br>          Defendants.<br>_____ | ) CIV. NO. 06-00543 JMS/BMK<br>)<br>) ORDER STAYING PROCEEDING<br>) AND DENYING MOTION TO<br>) REMAND WITHOUT PREJUDICE<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER  STAYING PROCEEDING AND DENYING MOTION
TO REMAND WITHOUT PREJUDICE

Defendant Merck & Co. ("Merck") appeals Magistrate Judge Barry

M. Kurren's December 7, 2006 Order Denying Merck's Motion to Stay and a

Finding and Recommendation that Plaintiffs' Motion to Remand be Granted.

After consideration of the appeal, a review of the entire record, and applying a *de novo* standard of review, the court GRANTS Merck's Motion to Stay pending a transfer decision by the Judicial Panel of Multidistrict Litigation ("JPML") and DENIES the Plaintiffs' Motion for Remand without prejudice.

## I.  BACKGROUND

John R. McClelland ("McClelland") claims that he suffered a heart attack on August 19, 2004 as a result of using Defendant Merck & Co.'s anti-inflammatory product Vioxx over a period of several years.  On August 17, 2006, McClelland and his wife (jointly referred to as "Plaintiffs"), both residents of the State of Hawaii, filed suit against Merck, a resident of the State of New Jersey, in the Circuit Court for the Third Circuit of the State of Hawaii.  Plaintiffs also named four Merck employees (sales representatives) as defendants, Jason M. Tongson, Karen S. Ochiai, Lisa Armenio, and Egan Inoue, all residents of the State of Hawaii.

Merck filed a timely notice of removal to this court on October 4, 2006.  Merck claims that "the only non-diverse defendants are fraudulently joined and, accordingly, their citizenship should be ignored."  Merck's Notice of Removal at ¶ 14.  In response, Plaintiffs filed a Motion to Remand on October 30,

2006. Merck then filed a Motion to Stay pending a possible transfer order by the JPML to the Eastern District of Louisiana.[1]

Plaintiffs' Motion to Remand and Merck's Motion to Stay were referred by this court to Magistrate Judge Kurren. On December 7, 2006, Magistrate Judge Kurren entered an Order Denying Merck's Motion to Stay and a Finding and Recommendation that Plaintiffs' Motion to Remand be Granted ("December 7, 2006 Order"). Merck appealed Judge Kurren's findings to this court on December 18, 2006, and Plaintiffs filed their response on December 29, 2006.

## II.  STANDARD OF REVIEW

Both parties assume that this court applies a *de novo* standard of review. Citing Local Rule 74.2, Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B), Merck and Plaintiffs correctly claim that a *de novo* standard of review applies to a magistrate judge's case dispositive order. Specifically, the district court must make a *de novo* determination of those portions of the

---

[1] On February 16, 2005, the JPML consolidated 138 federal Vioxx cases and transferred them to the Eastern District of Louisiana. *See In Re Vioxx Products Liability Litigation*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Since that time, over 4,000 additional actions have been transferred. *See* JPML Docket No. 1657, Conditional Transfer Order ("CTO") 71 (October 31, 2006). Plaintiffs' case was designated in CTO-71 as a "tag-along" action on October 31, 3006. *Id*. Pursuant to 28 U.S.C. § 1407, Plaintiffs filed an opposition to the CTO. That opposition will be heard by the JPML on January 25, 2007.

magistrate judge's report to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Under a *de novo* standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

Although not considered by the Ninth Circuit, several circuits have held that a motion to remand is to be treated as a dispositive motion. *See In re U.S. Healthcare*, 159 F.3d 142 (3d Cir. 1998); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509 (6th Cir. 2001); *First Union Mortgage Corp. v. Smith*, 229 F.3d 992 (10th Cir. 2000); *see also Thorp v. Kepoo*, 100 F. Supp. 2d 1258 (D. Haw. 2000). Given the agreement of the parties on this issue, and the present state of the law, the court agrees to treat the motion to remand as a dispositive motion, subjecting it to a *de novo* standard of review.

Magistrate Judge Kurren, however, also ruled on Merck's Motion to Stay. Motions to stay are non-dispositive, and normally reviewed under the clearly erroneous standard of review. *See Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862 (D. Or. 2002). After a careful review of this matter, however, the court concludes that the portion of the December 7, 2006 Order denying the Motion to Stay is unquestionably inextricably intertwined with the ruling on the

Motion to Remand.  Under the three-step analysis adopted by this court, the two issues cannot be decided in isolation.  Given these circumstances, the entirety of Magistrate Judge Kurren's Order is subject to a *de novo* standard of review.  *See, e.g., Marks v. Clarke*, 102 F.3d 1012, 1018 (9th Cir. 1997) (finding that the court had jurisdiction to review a summary judgment ruling normally not immediately appealable because that ruling was "unquestionably inextricably intertwined" with an appealable order on qualified immunity).

## III.  ANALYSIS

Courts resolve issues of jurisdiction as a preliminary matter before reaching the merits of the action.  *Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003).   Thus, jurisdictional issues should normally be resolved before the court determines if a stay is appropriate.  *Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155 (E.D. Ca. 2002).   "However, the calculus changes somewhat when deference to a MDL court will further 'the uniformity, consistency, and predictability in litigation that underlies the MDL system.'"  *Leeson v. Merck & Co., Inc.,* 2006 WL 3230047 (E.D. Ca. 2006), *citing Conroy v. Frest Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Ca. 2004).  In fact, the JPML in this matter found that "motions to remand . . . can be presented to and decided by

the transferee judge." *In Re Vioxx Products Liability Litigation*, 360 F. Supp. 2d 1352, 1354.

The Second Circuit discussed the relationship of jurisdictional challenges and MDL courts in relation to Agent Orange litigation:

> Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years. Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served.

*In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (citations omitted).

Further, the court finds helpful the three-step methodology applied by several district courts when considering simultaneous motions to remand to state court and to stay the proceeding.  "[A] court should first give preliminary scrutiny to the merits of the motion to remand.  If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Meyers v. Bayer AG*, 143 F.Supp. 2d 1044, 1049

(E.D. Wis. 2001). This preliminary review is a limited inquiry, "undertaken only if removal was clearly improper." *Leeson*, 2006 WL 3230047 at *3.[2] If "the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding."[3] *Meyers*, 143 F. Supp. 2d at 1049. If the remand issue appears factually or legally difficult, and the second question is answered in the affirmative, the court should then proceed to the third step and consider the motion to stay. *Id.*; *see also Conroy*, 325 F. Supp. 2d at 1053; *Leeson*, 2006 WL 3230047 at *2. Applying this analytical framework, the court finds that Merck's fraudulent joinder argument is not clearly improper, similar fraudulent joinder issues have

---

[2] If this preliminary review encompassed a comprehensive inquiry, the judicial economy offered by a stay would be greatly undermined. On the other hand, "[w]hen the merits of the remand motion are easy, a decision requires little judicial time and a stay would merely postpone the inevitable." *Board of Trustees of the Teachers' Retirement System of the State of Illinois v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002).

[3] Although the court adopts this overall approach, the second step in this analysis, whether "identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding" should not be applied literally. That a court is reviewing a jurisdictional challenge raised for the first time should not necessarily preclude issuing a stay. Instead, a better approach is to ask if identical or similar jurisdictional issues have been raised or are likely to be raised. This is a distinction without a difference in this matter, as fraudulent joinder issues have been raised in many Vioxx proceedings, and many have been transferred to the transferee court for consideration.

been raised in cases transferred to the MDL Court, and granting a stay best serves the interest of justice.

First, the court finds that removal from state to federal court was not clearly improper. Merck has claimed that Plaintiffs fraudulently joined the Merck employees as defendants to destroy diversity jurisdiction. Specifically, they argue that Senior Director for Merck James R. Dunn's declaration ("Dunn Declaration")[4] provides evidence that the actions of the Merck employees were within the scope of their employment and ratified by Merck, establishing fraudulent joinder under Hawaii law. A review of the Complaint, the Dunn Declaration, and the uncertainty of the law raises sufficient factual and legal issues such that the court cannot find that removal was clearly improper.[5] In other words, applying the

---

[4] During the November 16, 2006 argument on the Motion to Stay and Motion to Remand, Magistrate Judge Kurren invited Merck to file a supplemental declaration addressing whether Merck ratified the actions of its employee defendants.

[5] Merck argues that the Dunn Declaration ratified the employees' specific conduct set forth in paragraphs 33 to 47 of the Complaint, even though it was unable to ratify any non-specified acts based on general or broad language in the fraud claim. Magistrate Judge Kurren found that because Merck failed specifically to ratify the fraudulent conduct, the agency defense does not apply. December 7, 2006 Order at 8. This court views the matter somewhat differently. The specific allegations set forth in the fraud claim were restatements of allegations made in paragraphs 33 to 47, and the conduct set forth in paragraphs 33 to 47, according to Dunn, was ratified by Merck. In other words, the *specific* allegations of fraud have been ratified. Merck refused to ratify any other *unspecified* acts constituting fraud. It is not surprising that Merck could not ratify acts not specifically alleged in the Complaint. In addition to these factual issues, as noted by Magistrate Judge Kurren, the law regarding ratification in the context of intentional and fraudulent conduct is not clear. *Compare Davis v. Wholesale Motors, Inc.*, 86 Haw. 405, 949 P.2d 1026 (1998) and *Roehrig v. Tong*, 2006 WL 997589 (D. Haw. 2006) *with Kalawe v. KFC*
(continued...)

initial "limited inquiry" test, the court finds that Merck has set forth a basis upon which a court could uphold Merck's claim of fraudulent joinder.

Second, as Merck demonstrates, hundreds of Vioxx-related cases subject to a motion to remand have been stayed. *See Smith v. Merck & Co. Inc.*, 2006 WL 3842190 (S.D. Ill. 2006) ("[o]ver 2700 VIOXX related cases have been stayed, including more than 375 cases in which plaintiffs sought remand."); *see also Anderson v. Merck & Co., Inc.*, 2007 WL 43770 (S.D. Tex. 2007); *Chamberlain v. Merck & Co., Inc.*, 2006 WL 3201081 (E.D. Cal. 2006); *Mangani v. Merck & Co., Inc.,* 2006 WL 2707459 (D. Nev. 2006); *Ellis v. Merck & Co., Inc.,* 2006 WL 448694 (W.D. Tenn. 2006); *North v. Merck & Co., Inc.,* 2005 WL 2921638 (W.D. N.Y. 2005). Without question, similar jurisdictional issues concerning claims of fraudulent joinder have been raised in other cases, and those cases have been transferred to the MDL proceeding.

Given these preliminary findings, the court first considers the motion to stay before reaching the motion to remand. "A judge has wide discretion to use the inherent power of the federal court to promote judicial efficiency and prevent prejudice to the parties in granting or denying a motion to stay." *Association of Irritated Residents v. Fred Schakel Dairy*, ___ F.Supp. 2d ___, 2006 WL 3079020

---

[5](...continued)
*Nat'l. Mgmt. Co.*, 1991 WL 338566 (D. Haw. 1991).

at *7 (E.D. Cal. 2006). When ruling on a motion to stay, a district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated. *See Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997). Although granting the stay will likely cause delay to Plaintiffs, the court finds that this prejudice is greatly outweighed by the hardship and inequity to Merck, and, more importantly, by the interests of judicial economy.[6] The uniform treatment of remand motions avoids inconsistent rulings, promotes respect for the law, and conserves judicial resources. The transferee court "has been dealing with cases of this type for over a year and has developed extensive experience handling the pre-trial issues that commonly arise in the Vioxx products liability litigation, including motions for remand." *Anderson*, 2007 WL 43770 at *1. Accordingly, after balancing the competing interests, the

---

[6] The court finds unpersuasive Plaintiffs' argument that the fraudulent joinder issue is unique to Hawaii. First, the fraudulent joinder issue itself is an application of federal law. Second, although the transferee court will be required to consider Hawaii law in ruling on this issue, it is not unique in any way for a federal court to consider different state laws when ruling on a wide range of issues, especially in diversity cases. In fact, the transferee judge in the Vioxx litigation must consider individual state law in ruling on various aspects of the case before it. *See In re Vioxx Products*, 2006 WL 3391432 (E.D. La. 2006).

court finds that this matter should be stayed pending a decision on transfer by the JPML.

## IV. CONCLUSION

For the foregoing reasons, the court STAYS this proceeding pending a decision on transfer by the Judicial Panel of Multidistrict Litigation and DENIES Plaintiffs' Motion to Remand without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 18, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*McClelland v. Merck & Co., et al.*, Cv. No. 06-00543 JMS/BMK; Order Staying Proceeding and Denying Motion to Remand Without Prejudice